IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JAMES WILLIAMS,<br><br>                    Plaintiff,<br>    v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE CO.; MEDICITY INC.; GROUP SHORT TERM, LONG, TERM DISABILITY PLAN FOR EMPLOYEES OF MEDICITY, INC; BEHAVIORAL MEDICAL INTERVENTIONS; and MARIANNE JACOBS, D.O.<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMEN**T<br><br>Case No.  2:11-cv-00637 DN<br><br>District Judge David Nuffer |

      The Plaintiff in this ERISA case, James Williams, seeks to recover long-term disability ("LTD") benefits denied him by Defendants Hartford Life and Accident Insurance Company and Group Short Term, Long Term Disability Plan for Employees of Medicity, Inc. (collectively, "Hartford").[1]

      Both parties have filed motions for summary judgment.  Mr. Williams, in his request for summary judgment, argues that Hartford's denial of Mr. Williams's LTD benefits is not supported by the administrative record and is arbitrary and capricious.  Hartford likewise requests summary judgment, arguing that their decision to deny LTD benefits was reasonable and supported by the administrative record.  For the reasons discussed below, summary judgment is GRANTED in favor of Hartford.

---

[1] Complaint, docket no. 2, filed on July 8, 2011.

**BACKGROUND**

Mr. Williams was involved in a rollover car accident in 1998, resulting in injuries, most notably to his lower back.[2] Following this accident, and continuing through the time he requested disability benefits, Mr. Williams received treatment for back pain.[3] His treatment at first involved a series of injections, but was later discontinued, and Mr. Williams was instead given medication.[4] During this time, Mr. Williams continued to be employed: first as a store manager, then, starting in 2000, as a software engineer.[5]

In 2006, Mr. Williams moved to Utah, accepting full-time employment with Medicity Inc. ("Medicity") as a software engineer.[6] He continued working at Medicity until June 24, 2008, when he left the workplace because his migraines, reportedly, "made it impossible to write code or do troubleshooting."[7] A week later, on July 3, 2008, Mr. Williams submitted an "Application for Short Term Disability Income Benefits."[8]

Hartford approved short-term benefits through October 6, 2008.[9] Mr. Williams then applied and was approved for LTD benefits.[10] These benefits were paid as long as he met "the

---

[2] Administrative Record, docket no. 42 at HART-WILLIAMS 000007, filed on June 29, 2012 (Record).

[3] *Id.*

[4] *Id.*; *see id.* at 000154.

[5] *Id.* at 000353–55.

[6] *Id.* at 000353.

[7] *Id.* at 000524.

[8] *Id.* at 000524–25.

[9] *Id.* at 000517.

[10] *Id.* at 000071–73.

2

policy definition of Disability", among other requirements.[11]  Benefits continued for nearly two years until August 19, 2010, when Hartford informed Mr. Williams that he did "not meet the policy definition of Disability beyond August 19, 2010."[12]

This denial of benefits, according to Hartford, was based on several factors.[13]  Hartford had investigated[14] Mr. Williams's disability — migraines, back pain, and cognitive impairment — and obtained medical notes from Mr. Williams's treating physicians.[15]  One of these physicians, Dr. Paisley, was sent a Hartford questionnaire.[16]  In response, Dr. Paisley indicated that Mr. Williams could "sit up to 2 hour bouts with opportunity to change positions, with stand and walk required only occasionally in a[n] 8 hour day, reflecting sedentary work setting"[17]; Mr. Williams had the "ability to frequently reach (answering phones, retrieving papers) at desk level in a[n] 8 hour day"[18]; and Mr. Williams could "wear tinted glasses to avoid contrast in a work setting."[19]

---

[11] *Id.* at 000071.  Neither party presents an issue of plan interpretation or challenges the LTD benefits definition of "disability" or "disabled."

[12] *Id.* at 000030.

[13] *Id.*

[14] *Id.* at 000453–57.

[15] *Id.* at 000032–33.

[16] *Id.* at 000344–45.

[17] *Id.*

[18] *Id.*

[19] *Id.*

Harford also obtained medical notes from Dr. Dall (who works at an orthopedic clinic),[20] Dr. Foster (who works at a neurology clinic),[21] and Dr. Huan (who also works at a neurology clinic).[22] In all, Hartford concluded that Mr. Williams was "able to sit for up to two hours at a time (with opportunity to change position) for . . . 8 hours total per day[,] . . . to frequently reach to perform activities . . . at desk level within an 8 hour day" and that Mr. Williams had "no cognitive impairments."[23]

Following his initial denial of LTD benefits, Mr. Williams filed an appeal on January 15, 2011.[24] For appeals, Hartford maintains "a separate Appeal Unit," which is, according to Hartford, "charged with making an independent assessment of the claim."[25] Two noteworthy events occurred during the appeals process.

First, Dr. Paisley retracted his earlier statement, based at least in part on the fact that Mr. Williams conducted a home trial of "light duty" for a workplace scenario, including wearing the tinted glasses during the day.[26] However, during this home trial, Dr. Paisley noted that Mr.

---

[20] *Id.* at 000372. Mr. Williams was referred to Dr. Dall for "evaluation of chronic low back and proximal leg pain." *Id.* at 000010. Dr. Dall states in Mr. Williams's medical record, "[s]uffice it to say, however, that I do not feel that [Mr. Williams] has a disabling low back condition." *Id.*

[21] *Id.* at 000382. Dr. Foster noted that Mr. Williams's "cognitive and memory performance [were] good . . . and [did] not represent any significant deficits." *Id.* at 000375–78. About Mr. Williams's disability status, Dr. Foster said: "I did not address his disability status. . . . I do not believe that cognitive abilities should be limiting to all employment." *Id.*

[22] *Id.* at 000482–485. Mr. Williams visited Dr. Huan "for evaluation of headache." *Id.* at 000484. About Mr. Williams's migraines, Dr. Huan noted that there was a "definite factor of medication overuse," and that Mr. Williams stated that it was "unrealistic to be off of those medications . . . due to his back issues." *Id.* In a follow-up evaluation several months later, Dr. Huan noted that Mr. Williams had "been resistant to most medications for headache," and suspected that "the reason [Mr. Williams] [had] a hard time receiving any methods for a headache treatment is due to his medication use for his chronic back pain." *Id.* at 000487.

[23] *Id.* at 000033.

[24] *Id.* at 000088.

[25] *Id.* at 000024.

[26] *Id.* at 000213.

Williams reported that "5-6 days *[sic]* each week, he develops a debilitating migraine that requires him to remove himself from his activities, seek a dark quiet place and treat with medication."[27] Mr. Williams further reported that his "headaches usually last anywhere from 4-8 hours."[28] With the home trial results, Dr. Paisley now felt that Mr. Williams was "disabled by his situation."[29]

Second, Hartford hired Dr. Marianne Jacobs, a certified Neurologist, to conduct a "file review" and to contact Dr. Dall, Dr. Paisley, and Dr. Foster "for clarification of Mr. Williams's medical condition and functional status."[30] Based on her conversations with Mr. Williams's treating physicians and a review of the medical records, Dr. Jacobs found that "Mr. Williams does have times when he has severe headaches," but "is on abortive medications and should be able to take them successfully when his headaches become severe."[31] Dr. Jacobs further found "no evidence in the records to support [Mr. Williams's] claims," and concluded that Mr. Williams "would have no restrictions or limitations [with regard to the ability to sit, stand, reach, lift, finger, etc.], including sustaining full-time work."[32]

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 000016–18, 000231–39.

[31] *Id.* at 000236. Abortive medications are "types of drugs . . . taken during migraine attacks and are designed to stop symptoms that have already begun." *See* Mayo Clinic staff, *Migraine: Treatments and drugs*, MAYO CLINIC (June 4, 2011), *available at* http://www.mayoclinic.com/health/migraine-headache/DS00120/DSECTION=treatments-and-drugs.

[32] Record at 000238.

Claiming to give no deference to its earlier decision, Hartford affirmed the denial of LTD benefits.[33] Hartford rejected Dr. Paisley's revised opinion as "fail[ing] to provide any current objective findings that support a sub-sedentary capacity," and asserted that Dr. Paisley's opinion "of [Mr. Williams's] functional ability [was] based mostly, if not entirely, on Mr. Williams' own self-reported symptoms and limitations."[34]

Mr. Williams, after exhausting his administrative remedies, brought this lawsuit under § 502(e) of ERISA seeking judicial review of Hartford's denial of benefits.

## STANDARD OF REVIEW

Where, as here, a benefit plan gives "the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, we review the administrator's decision for abuse of discretion," or, interchangeably, whether the administrator's decision was arbitrary and capricious.[35] Under this standard, the administrator's denial is upheld "as long as it has a 'reasoned basis.'"[36] This means that the administrator's decision "need not be the only logical decision or even the best decision," but instead "resides somewhere on a continuum of reasonableness — even if on the low end.'"[37]

---

[33] *Id.* at 000013.

[34] *Id.* at 000017.

[35] *Williams v. Metro. Life Ins. Co.*, 459 Fed. App'x. 719, 722–23 (10th Cir. 2012) (unpublished). In the ERISA context, "the abuse of discretion and the arbitrary and capricious standards of review are 'interchangeable.'" *See id.* at n.2 (quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 n.10 (10th Cir. 2008)).

[36] *Id.* at 723 (quoting *Graham v. Hartford Life & Accident. Ins. Co.*, 589 F.3d 1345, 1357 (10th Cir. 2009)).

[37] *Id.* (quoting *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)).

Conversely, an administrator abuses its discretion "when its decision is not supported by substantial evidence."[38] Substantial evidence is "'more than a scintilla [of evidence], but less than a preponderance.'"[39] Substantiality is "based upon the record as a whole."[40]

Because Hartford, however, "both evaluates claims for benefits and pays benefits claims," there is an inherent conflict of interest.[41] Mr. Williams argues that this conflict of interest requires the court to "undertake a sliding scale analysis, where the degree of deference accorded the Plan Administrator is inversely related to the seriousness of the conflict."[42] The court disagrees.

"[W]hen the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict."[43] Rather than altering the standard of review — from more to less deferential — conflicts are simply "one factor among many that a reviewing judge must take into account" when reviewing the lawfulness of benefit denials.[44] As a "factor" in assessing whether a denial is arbitrary and capricious, a conflict of interest should "prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision . . . . [or]

---

[38] *Id.* (quoting *Graham*, 589 F.3d at 1357).

[39] *Id.* (quoting *Graham*, 589 F.3d at 1358).

[40] *Id.* (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002)). Further, in determining whether "the evidence in support of the administrator's decision is substantial, we consider whether any information in the record undercuts the administrator's conclusion." *Id.*

[41] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).

[42] Memorandum in Support of Plaintiff's Motion for Summary Judgment at 9–10, docket no. 41, filed on June 29, 2012 ("Plaintiff's Memorandum") (citing *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006)).

[43] *Rizzi v. Hartford Life & Accident Ins. Co.*, 383 Fed. App'x. 738, 748 (10th Cir. 2010) (unpublished) (quoting *Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010)).

[44] *Glenn,* 554 U.S. at 116–117. Such conflicts are not uncommon in this context. *See Rizzi*, 383 Fed. App'x. at 748.

less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy."[45]  In brief, a conflict of interest is "considered as one of many case-specific factors in determining whether the administrator's decision was an abuse of discretion."[46]

## DISCUSSION

Mr. Williams argues that Hartford's denial of benefits was an abuse of discretion because (1) Hartford based its decision on a report that relied on information gathered in violation of his "right to privacy;" (2) Harford did not meet its burden of demonstrating that there was a "material change in Mr. Williams's condition" which would justify denying benefits; (3) Hartford relied on Dr. Jacobs's flawed report; and (4) Hartford relied on a file review by Dr. Jacobs rather than requiring Dr. Jacobs to conduct a medical examination.  Before addressing these arguments, however, the court will first look to see whether Hartford's dual role as insurer and plan administrator affected Hartford's decision.

> A. *Hartford's Dual Role as Insurer and Administrator did not Affect the Benefits Decision.*

Although Mr. Williams includes his conflict of interest discussion in his argument for a sliding scale standard of review, the court will instead review the alleged conflict of interest under *Glenn* as "but one factor among many" that the court must take into account.[47]  After reviewing the administrative record, the court does not agree that a conflict of interest affected Hartford's decision.

---

[45] *Glenn*, 554 U.S. at 117.

[46] *Rizzi*, 383 Fed. App'x. at 748.

[47] *Glenn,* 554 U.S. at 115.

8

Mr. Williams points to two alleged facts in making his conflict of interest argument. The first is, as Mr. Williams puts it, Hartford's "unusually determined effort to terminate [Mr. Williams's] benefits at the first available opportunity," and the second is that on appeal Hartford improperly discounted Dr. Paisley's retraction and revised opinion as to Mr. Williams's disability status.[48]

As a general matter, "there is nothing procedurally improper about the use of surveillance" in the investigation of a disability benefits claim.[49] Mr. Williams does not argue that investigative efforts are *per se* indicia of a conflict of interest, but rather that Hartford's investigation somehow went beyond the pale.

Surveillance of the kind that Hartford engaged in is not uncommon, however.[50] Hartford hired private investigators to conduct surveillance of Mr. Williams,[51] pulled Mr. Williams's credit report,[52] and searched public records for information about Mr. Williams.[53] Hartford's conduct did not exceed the bounds of permissible investigation. Hartford is indisputably allowed to investigate the veracity of disability claims. The investigative efforts in this case, including their initiation, frequency, and duration, do not indicate a "higher likelihood that it affected the benefits decision."[54]

---

[48] Plaintiff's Memorandum at 9–12.

[49] *Johnson v. Liberty Life Assur. Co.*, 262 Fed. App'x. 865, 870–71 (10th Cir. 2008) (unpublished) (citing *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F. 3d 834, 841 (8th Cir. 2001)).

[50] *See id.*; *Lucas v. Liberty Life Assur. Co.*, 444 Fed. App'x. 243, 244–45 (10th Cir. 2011) (unpublished); *Rizzi*, 383 Fed. App'x. at 743–45.

[51] Record at 000677–83.

[52] *Id.* at 000664–68.

[53] *Id.* at 000657–63.

[54] *Glenn*, 554 U.S. at 117.

Mr. Williams also points to Hartford's alleged disregard of Dr. Paisley's retraction and revised opinion as evidence of a conflict of interest that affected Hartford's disability decision.[55] As already noted, after Hartford's initial denial, Dr. Paisley retracted his earlier opinion that Mr. Williams could function in a workplace. Dr. Paisley now believes that Mr. Williams is "disabled by his situation."[56] Mr. Williams alleges that Hartford changed its initial position of embracing Dr. Paisley's assessment to "reject[ing] [it] outright" when the assessment no longer served Hartford.[57] The court disagrees with this characterization.

While plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence,"[58] Hartford did credit Dr. Paisley's opinion in its initial decision and on review.[59] On appeal, Hartford analyzed anew Mr. Williams's disability claim — including Dr. Paisley's retraction and revised opinion.[60] Moreover, even if Hartford did give less weight to Dr. Paisley's revised opinion, that fact does not indicate a conflict of interest.[61] The court has "no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may [we] impose on administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."[62]

---

[55] Plaintiff's Memorandum at 11–12.

[56] Record at 000213.

[57] Plaintiff's Memorandum at 11.

[58] *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

[59] Record at 000236, 000238.

[60] *Id.* at 000013–18.

[61] Nor is Hartford's treatment of Dr. Paisley's latter opinion an abuse of discretion. *See, e.g.*, *Finley v. Hartford Life & Accident Ins. Co.*, 400 Fed. App'x. 198, 200 (9th Cir. 2010) (unpublished) (explaining that it "was not an abuse of discretion for Hartford to conclude that Finley lacked credibility and therefore to discount the value of her self-reported pain incidence . . . and place more weight on the surveillance video.").

[62] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135 (10th Cir. 2011) (citing *Black & Decker Disability Plan*, 538 U.S. at 834).

In this case, the inherent conflict of interest was less important, nearly to a vanishing point. Hartford took steps to reduce potential bias and to promote accuracy. Hartford, among other things, provided Mr. Williams a review of its initial denial and an opportunity to submit additional information.[63] On appeal, individuals different from those who made the initial denial conducted the review.[64] No deference was given to the earlier decision denying benefits.[65] And, as part of the review, Hartford hired an independent physician,[66] which "actually *decreases* the importance of a plan administrator's inherent conflict of interest."[67]

Other than the inherent structural conflict of interest that is common to disability benefits cases, Hartford's decision to deny benefits was largely unaffected by Hartford's dual role as insurer and administrator.

> B. *The Method of Information Gathering by Dr. Jacobs did not Render Hartford's Denial Arbitrary and Capricious.*

Mr. Williams next argues that Hartford violated his privacy rights by directing Dr. Jacobs, the independent physician, to contact by telephone Mr. Williams's treating physicians[68] even though Mr. Williams had earlier asked Hartford not to contact "any source of information in any manner *other than by writing*."[69] Mr. Williams asserts that this alleged violation made Hartford's ultimate decision denying benefits arbitrary and capricious.

---

[63] Record at 000013–18.

[64] *Id.* at 000013.

[65] *Id.*

[66] *Id.* at 000016, 000231–39.

[67] *Rizzi*, 383 Fed. App'x. at 750 (emphasis in original).

[68] Record at 000093, 000237–38.

[69] *Id.* at 000216 (emphasis in original). Mr. Williams's general grievance is well-taken. It was Mr. Williams's intention to force Hartford to proceed in writing. Dr. Jacobs did not do so, instead contacting Mr. Williams's treating physicians by telephone. But as we explain, this does not make the denial arbitrary and capricious.

Hartford's alleged violation of Mr. Williams's privacy rights, assuming there was one, does not render the ultimate decision denying benefits arbitrary and capricious. Mr. Williams contends that Dr. Jacobs relied heavily on illegally-obtained information in drafting her report, and that Hartford then adopted Dr. Jacobs's findings as its final decision, which as a result made Hartford's final decision arbitrary and capricious.[70] However, Dr. Jacobs based her conclusion only *in part* on the telephone conversations. The other foundation for Dr. Jacobs's conclusion was — as Mr. Williams apparently agrees — proper evidence, including medical notes and other written records. Dr. Jacobs specifically stated that her conclusions were "[b]ased on [her] review of the records *and* [her] conversations with all of the treating physicians."[71]

What is more, Hartford did not merely adopt Dr. Jacobs's allegedly tainted findings as its final decision.[72] The administrative record shows that Hartford had other evidence at its disposal, and certainly Hartford makes this clear, stating that it "reviewed [Mr. Williams's] file in its entirety"[73] and that the denial was "based on the contractual provisions of the Medicity [plan] . . . and the medical documentation contained in [Mr. Williams's] claim file, taken as a whole . . . ."[74]

For these reasons, Hartford's decision to deny LTD benefits was not arbitrary and capricious because of an alleged violation of Mr. Williams's privacy rights by Hartford or Dr. Jacobs.

---

[70] *Id.*

[71] *Id.* at 000238 (emphasis added).

[72] *Id.* at 000013–18.

[73] *Id.* at 000013.

[74] *Id.* at 000018.

### C. *Hartford does not Need to Prove a Material Change in Mr. Williams's Condition to Justify a Denial of Benefits which Hartford had Earlier Approved.*

Mr. Williams next argues that because Hartford had previously (in 2008) approved Mr. Williams's LTD benefits claim, that Hartford, in denying the same claim after almost two years of paying benefits, must show "some" improvement in Mr. Williams's condition; otherwise Hartford's decision is arbitrary and capricious. Insurers however have the ability "to revisit disability issues and to reach a different result even in the absence of evidence of medical improvement."[75] This is what Hartford did. Hartford's decision was not rendered arbitrary and capricious as a result.

Mr. Williams's argument might have been plausible if, for example, the evidentiary balance had not changed from the time of Mr. Williams's initial approval to his later denial.[76] But this was not the case. For one, there was the questionnaire sent to Dr. Paisley on June 7, 2010 which supports the idea that Mr. Williams was able to work.[77] There is also the surveillance evidence,[78] as well as the medical notes recorded after Mr. Williams's initial approval but before his later denial.[79] Even subtracting Dr. Paisley's questionnaire from the evidentiary equation, an independent physician reviewed Mr. Williams's file on appeal. It was not unreasonable for Hartford to come to a different conclusion in 2010 than it did in 2008, on different evidence.

---

[75] *Palmer v. Metro. Life Ins. Co.*, 415 Fed. App'x. 913, 918 (10th Cir. 2011) (unpublished).

[76] *Cf. McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002) (stating, "[w]e are not suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind; *but unless information available to an insurer alters* in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments.") (emphasis added).

[77] Record at 000344–45.

[78] *Id.* at 000677–83.

[79] *See, e.g.*, *id.* at 000033.

D. *Hartford's Reliance on Dr. Jacobs's Report does not Render Hartford's Decision to Deny Benefits Arbitrary and Capricious.*

Mr. Williams argues that Dr. Jacobs's report was flawed, and that because Hartford relied on Dr. Jacobs's report, Hartford's decision was arbitrary and capricious as a result.[80] Dr. Jacobs's report is not flawed, and would not have rendered Hartford's denial of benefits arbitrary and capricious in any event.

Mr. Williams claims that the report was flawed for two reasons. First, Mr. Williams argues that Dr. Jacobs based her report on information obtained through violations of Mr. Williams's privacy rights. This argument is not persuasive for the reasons already discussed above.

Second, Mr. Williams contends that the evidentiary basis of Dr. Jacobs's report is irrelevant to the real condition at issue in Mr. Williams's disability claim — migraines. It is true that, with the exception of Dr. Paisley, Dr. Jacobs contacted physicians that could not or did not speak directly to Mr. Williams's migraines.[81] But this does not render Dr. Jacobs's report "flawed." Arguably, this contact makes the report thorough. It was only after Dr. Jacobs's conversations and a review of the medical records[82] that Dr. Jacobs concluded that Mr. Williams could take "abortive medications . . . when his headaches become severe," and that Mr. Williams was not disabled.[83]

---

[80] Record at 000018–22.

[81] *See, e.g.*, *id.* at 000010 (recording by Dr. Dall stating that he "really [did] not understand the nature or severity of headaches."); *id.* at 000375 (noting that Dr. Foster "saw [Mr. Williams] in consultation for memory loss.").

[82] *Id.* at 000231–39.

[83] *Id.* at 000236–37.

Additionally, Dr. Jacobs's report is not the only evidence in the record, and not the only evidence that Hartford considered in its denial of benefits.[84]  There was, for example, the medical notes and surveillance.  And as Hartford noted in its letter affirming the original denial, its decision was "based on the contractual provisions . . . and the medical documentation contained in [Mr. Williams's] file, taken as a whole."[85]  Accordingly, even if Dr. Jacobs's report was somehow flawed, Hartford's denial of benefits was not arbitrary and capricious.

### E. Hartford's Reliance on File Review Instead of a Medical Examination was not Improper.

Mr. Williams's final argument is that Hartford's reliance on Dr. Jacobs's file review, without requiring Dr. Jacobs to do a medical examination of Mr. Williams, was arbitrary and capricious. Mr. Williams relies heavily on *Lalli v. The Hartford Insurance Co.*[86]  However, the *Lalli* decision has since been vacated and withdrawn.[87]

Mr. Williams does not cite any authority for the proposition that a denial of disability benefits without a file review by an independent physician — much less a medical examination — is arbitrary and capricious.  That is, a denial decision made *without* the involvement of an independent physician is not automatically made arbitrary and capricious.[88]  Nor does the

---

[84] *Id.* at 000013–18.

[85] *Id.* at 000018.

[86] 854 F. Supp. 2d 1156 (D. Utah 2012).

[87] *Lalli v. Hartford Ins. Co.*, 1:10-cv-00152-DB (Oct. 29, 2012), docket no. 58, filed on Oct. 29, 2012.

[88] *See, e.g.*, *Flanagan v. Metro. Life Ins.*, 251 Fed. App'x. 484, 487–89 (10th Cir. 2007) (unpublished) (affirming the denial of disability benefits even though the facts note that a "MetLife internal nurse consultant reviewed Ms. Flanagan's file and documentation," and not an independent physician).

involvement of an independent physician automatically save an otherwise defective decision from being arbitrary and capricious.[89]

Therefore, the absence of a medical examination did not make Hartford's decision — which is supported by substantial evidence — arbitrary and capricious.

## CONCLUSION AND ORDER

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (docket no. 37) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (docket no. 40) is DENIED.

IT IS FURTHER ORDERED that summary judgment is ENTERED in favor of Defendants on Plaintiff's remaining claim for ERISA benefits, the first cause of action in Plaintiff's Complaint (docket no. 2).

IT IS FURTHER ORDERED that the clerk of the court shall close this case.

Dated March 29, 2013.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[89] *See, e.g., Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 799, 809 (10th Cir. 2004) (deciding that the denial of benefits was arbitrary and capricious even though the claimants medical file were sent by the insurer for a review).